**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

RYAN HEATH,

        Movant,

vs.

UNITED STATES OF AMERICA.

No. 12-CV-2035-LRR
No. 09-CR-2003-LRR

**ORDER**

_____

I.     **INTRODUCTION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **RELEVANT BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

    *A.*    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2
    *B.*    *The Movant's Allegations* . . . . . . . . . . . . . . . . . . . . . . . . . . .5
    *C.*    *Counsel's Affidavit* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

III.   *ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

    *A.*    *Parties' Arguments.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**
    *B.*    *Applicable Law.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13
        *1.*    *Standards applicable to motion
            pursuant to 28 U.S.C. § 2255.* . . . . . . . . . . . . . . . . . . . . . 13
        *2.*    *Standards applicable to Sixth Amendment* . . . . . . . . . . . . . . .14
        *3.*    *Standards for evidentiary hearing.* . . . . . . . . . . . . . . . . . . . 17
    *C.*    *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18
    *D.*    *Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . .23

IV.   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

# I.  INTRODUCTION

This matter appears before the court on Ryan Heath's ("the movant") motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 ("motion") (civil docket no. 1).  The movant filed the motion on April 30, 2012.  On February 27, 2013, the court, among other things, directed the government to brief the claims that the movant included in the motion.  *See* February 27, 2013 Order (civil docket no. 2).  On March 26, 2013, Brent D. Rosenberg, the movant's counsel,[1] filed an affidavit (civil docket no. 4).  On April 26, 2013, the government filed a resistance to the motion (civil docket no. 5).  On May 14, 2013, the movant filed a reply (civil docket no. 7).  The motion is fully submitted and ready for decision.

# II.  RELEVANT BACKGROUND

## A.  Procedural History

On January 28, 2009, the government filed a two-count indictment against the movant.  The indictment charged the movant with producing and attempting to produce visual depictions of minors engaging in sexually explicit conduct in violation of 18 U.S.C. § 2251(a), 18 U.S.C. § 2251(e) and 18 U.S.C. § 2 (Count I) and knowingly possessing and attempting to possess a visual depiction of minors engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252A(a)(5)(B), 18 U.S.C. § 2252A(b)(2) and 18 U.S.C. § 2 (Count II).  *See* Indictment (criminal docket no. 1).  On March 5, 2009, the movant filed a motion to suppress certain items that law enforcement seized while searching the movant's home on April 26, 2007.  *See* Motion to Suppress (criminal docket no. 14).  On March 20, 2009, United States Chief Magistrate Judge Jon S. Scoles held a hearing on the motion to suppress and reserved ruling.  *See* March 20, 2009 Minute Entry (criminal

---

[1] Hereafter, the court will refer to Rosenberg as "counsel."  Alfred E. Willett represented the movant at the sentencing and appellate proceedings, and the court will refer to him by name.  Kent A. Simmons represented the movant at the appellate proceedings, and the court will also refer to him by name.

docket no. 24). On March 23, 2009, the movant filed a motion, pursuant to Federal Rule of Criminal Procedure 12(b)(2), asking the court to rule on whether a mistake-of-age defense was available under 18 U.S.C. § 2251(a) and (e), the underlying statute for Count I, and, if so, that the jury be instructed that a reasonable mistake-of-age was an affirmative defense. *See* Motion for Ruling (criminal docket no. 26). On that same date, the movant notified the court of his intent to enter a conditional guilty plea pursuant to a plea agreement. *See* Notice of Intent to Enter Guilty Plea (criminal docket no. 25). In the plea agreement, the movant preserved his right to withdraw his guilty plea if the court were to allow a mistake-of-age defense prior to sentencing and also to contest the court's decision on appeal if it did not allow the mistake-of-age defense. *See* Plea Agreement (criminal docket no. 33-1) at 1. On March 24, 2009, Judge Scoles filed a Report and Recommendation in which he recommended that the undersigned deny the motion to suppress as moot in light of the movant's intent to enter a guilty plea. *See* March 24, 2009 Report and Recommendation (criminal docket no. 28). On March 30, 2009, the movant, pursuant to the plea agreement, entered a conditional guilty plea as to Count I of the indictment before Judge Scoles. *See* March 30, 2009 Minute Entry (criminal docket no. 33). On that same date, Judge Scoles filed a Report and Recommendation in which he recommended that the undersigned accept the movant's conditional guilty plea. *See* March 30, 2009 Report and Recommendation (criminal docket no. 34). On April 7, 2009, the undersigned adopted Judge Scoles's March 30, 2009 Report and Recommendation, thereby accepting the movant's conditional guilty plea. *See* April 7, 2009 Order (criminal docket no. 37). On April 22, 2009, the undersigned adopted Judge Scoles's March 24, 2009 Report and Recommendation, thereby denying the movant's motion to suppress. *See* April 22, 2009 Order (criminal docket no. 39). On May 1, 2009, the undersigned denied the movant's Motion for Ruling to the extent that it requested that a mistake-of-age defense

was constitutionally mandated and that it should be included in a jury instruction. *See* May 1, 2009 Order (criminal docket no. 40).

On September 17, 2009, the movant's counsel filed a sealed motion to withdraw from representing the movant. *See* Ex Parte Sealed Motion (criminal docket no. 53). On that same date, the court granted counsel's motion and continued the movant's sentencing hearing. *See* September 17, 2009 Amended Minute Entry (criminal docket no. 54-1). On September 25, 2009, Alfred E. Willett appeared on behalf of the movant, and he represented the movant in the sentencing and appellate proceedings. *See* Appearance (criminal docket no. 56). On January 28, 2010, the court entered judgment against the movant, sentencing him to 293 months in prison and ten years of supervised release following his term of imprisonment. *See* Judgment (criminal docket no. 90).

On February 9, 2010, the movant filed a notice of appeal. *See* Notice of Appeal (criminal docket no. 92). On direct appeal, the movant argued that the court erred by not allowing the movant to present a mistake-of-age defense and that his sentence was procedurally unsound and substantively unreasonable. On November 16, 2010, the Eighth Circuit Court of Appeals rejected the movant's arguments that he was entitled to a mistake-of-age defense and that the court erred in sentencing the movant. *See United States v. Heath*, 624 F.3d 884, 886, 889 (8th Cir. 2010). On April 25, 2011, the United States Supreme Court denied the movant's petition for a writ of certiorari. *See Heath v. United States*, 131 S. Ct. 2164, 2164 (2011).

In his 28 U.S.C. § 2255 motion, the movant asserts that he was denied effective assistance of counsel because counsel induced a guilty plea by improper misrepresentation and promises. Specifically, the movant claims his guilty plea was not knowing, intelligent and voluntary because he only pled guilty due to counsel allegedly promising that the movant would only serve the statutory minimum of fifteen years if he pled guilty, that the movant would be sentenced to a term of imprisonment above the statutory maximum if

found guilty at trial, that the undersigned would personally assist the movant's counsel in preparing a brief that would convince the Eighth Circuit Court of Appeals to recognize a mistake-of-age-defense and remand the case, and that, once remanded, the movant would be acquitted at trial. Due to the nature of the movant's allegations, the court finds it appropriate to summarize the movant's allegations and counsel's response.

## B. The Movant's Allegations

On September 3, 2008, when counsel first met the movant, counsel allegedly told the movant that if the case were brought to federal court, he could "fix these types of problems" and "make all this go away" because he had connections to the undersigned as counsel's father had helped the undersigned get appointed as a federal judge. Allegedly, counsel told the movant that the undersigned "owes everything to my family" and that the undersigned was "in his pocket." Brief in support of the motion (civil docket no. 1-1) at 15-16. The movant asserts that these statements led him to notify his attorney who was representing him on the state court charges, Alfredo Parrish, that counsel was taking over the case. The movant then paid counsel a $20,000 retainer.

On January 28, 2009, the government filed an indictment in federal court. Over the next few months, counsel met with the movant to discuss trial strategies and allegedly asked the movant for another $25,000 "to pay the piper, refer[ring] to [the undersigned]." *Id*. at 16. On February 5, 2009, the movant pled not guilty before Judge Scoles, and between that date and the third week of March 2009, the movant asserts that he reiterated to counsel that he did not want to plead guilty and wanted to prove at trial that the women whom he produced sexually explicit images of had represented that they were not minors.

On March 20, 2009, the same day as the motion in limine hearing before Judge Scoles, the movant claims to have learned that counsel had been talking with the movant's family about a guilty plea. The movant states that he was confused by the change of strategy as he had consistently expressed his desire to go to trial. Counsel then told the

movant that the mistake-of-age defense was likely foreclosed by a prior Eighth Circuit Court of Appeals ruling, which would make an acquittal at trial unlikely. The movant claims to have asked counsel about his arrangement with the undersigned and the substantial amount of money he had paid counsel, and the movant states that he insisted on going to trial.

The movant alleges that counsel then "hounded [the movant] to enter into a plea of guilty. . . . [A]fter a while, [the movant] felt the relentless mental overbearing, it was so overbearing that it overcame the will of [the movant]. It wasn't long before [counsel] began to threaten [the movant]. At one point [counsel] told [the movant] that [the undersigned] was going to sentence him to [thirty] years." *Id.* at 18-19. The movant states that he asked counsel why he had to plead guilty if the undersigned was "in our corner," and counsel allegedly stated that the undersigned could not help the movant unless he pled guilty because if the undersigned helped the movant during trial it would look too suspicious. *Id.* at 19.

The movant states that counsel then threatened him that the undersigned would sentence him to thirty years for Count I and twenty years for Count II if he did not plead guilty. Eventually, counsel allegedly told the movant that he had spoken with the undersigned, who said she would sentence the movant to 200 years if the movant were found guilty at trial. Allegedly, counsel also assured the movant that if he pled guilty, then ten months after his sentencing, the Eighth Circuit Court of Appeals would remand the case to the district court, where the undersigned could then assist the movant in getting an acquittal. The movant also states that counsel promised the movant that the undersigned would assist in drafting the appellate brief upon which the Eighth Circuit Court of Appeals would rule. Counsel allegedly shook the movant's hand and "promised [the movant] that he would be sentenced to a [fifteen-year] sentence and approximately [ten] months later

the case would be back before [the undersigned] and [the movant] would be going home after the trial." *Id.* at 20.

Prior to his guilty plea hearing, the movant states that counsel warned the movant that Judge Scoles would ask if him if he made any deals and that the movant had to do his part and deny that he made any deals with the undersigned. When the movant said that he could not admit something he did not do, counsel allegedly said that if he did not plead guilty or indicated that he made a deal with the undersigned, the movant would get life imprisonment.

In the following months after pleading guilty, counsel communicated with the movant regarding the pre-sentence investigation report ("PSIR") and sentencing. The movant allegedly asked counsel why this all mattered given their agreement with the undersigned. In July 2009, the movant states that counsel met with the movant at the Bremer County jail and asked for $25,000 in cash, which counsel allegedly said was for the undersigned. The movant states that counsel had already asked the movant's father, Greg Heath, for the $25,000 prior to the meeting. The movant states that he got into an argument with counsel because the movant had already paid him $45,000, and the movant refused to pay anything more. Counsel then allegedly yelled at the movant and insisted that there must be more money. The movant states that when he continued to say he would not pay anything else, counsel gave the movant a form to apply for court-appointed counsel and also said he would go to the movant's family for the $25,000.

On September 17, 2009, Jay Roberts, the Heath family attorney, sent a letter to counsel addressing the financial form that counsel provided to the movant. In the letter, Roberts questioned why counsel was withdrawing from representing the movant so close to sentencing and stated that the decision to withdraw arose "after you told [the movant] you had [the undersigned] in your pocket because your dad got her her judgeship. Unfortunately, there are more than one or two witnesses to what you have said."

September 17, 2009 Letter (civil docket no. 1-5) at 1. Roberts went on to say that "[i]t appears to me that what is going on here is that you made a number of promises and elicited a large amount of money . . . and now you can't live up to your promises." *Id.*

On that same date, counsel withdrew as the movant's counsel in a proceeding before the court. In his motion to withdraw, counsel cited Iowa Rules of Professional Conduct 32:1.6, 32:3.3 and 32:3.7. *See* Motion to Withdraw (criminal docket no. 53). Prior to the hearing, counsel allegedly told the movant that he could still "salvage" the ordeal if he received $25,000 for the undersigned. Brief in support of the motion at 27. The movant states that he refused to pay the money. The undersigned then granted counsel's motion to withdraw at the hearing. *See* September 17, 2009 Amended Minute Entry. During the hearing, the movant states that he "had the firm belief that it was best to just agree to release [counsel] without making a scene or provoking the court. . . . [The movant] doesn't know if [counsel] did or did not have an agreement with the court, whether [counsel] was lying to him about the agreement, the money, the appeal or any other guarantees extended by [counsel]. [The movant] regrets not placing this whole ordeal on record before this court." Brief in support of the motion at 27.

A year later, on September 3, 2010, Roberts wrote a letter to Kent A. Simmons, who assisted the movant on appeal, that indicated that counsel stated that "he had Judge Reade in his pocket" in front of Greg Heath; Amy Long, the movant's girlfriend; and John VanHauen, a family friend. September 3, 2010 Letter (civil docket no. 1-6) at 3. Roberts indicated that counsel told him, "I [am] the best deal [the movant] has because I have control of [the undersigned]." *Id.* Roberts also wrote that counsel at one point said to Greg Heath, Long, VanHauen and possibly others that "I may need [$25,000] in cash" and if he received it, that this would "all go away." *Id.*

8

### C. Counsel's Affidavit

Counsel states that when he met the movant on September 3, 2008, he told the movant that he had known the undersigned since law school, that the undersigned had been a partner in his father's former law firm and that the undersigned and his father remained friends. Counsel also states that he discussed with the movant the undersigned's temperament and judicial philosophy, specifically with regard to child pornography cases. Counsel states that he told the movant how he thought legal and factual issues should be presented to the court in light of his knowledge and experience litigating before the undersigned. However, counsel denies that he said anything that could imply to a reasonable person that he had an undue influence on the undersigned. Counsel also states that throughout the time he represented the movant, he never had the impression that the movant thought counsel had an undue influence on the court.

Counsel rejects the movant's assertion that he did not discuss a plea with the movant before March 2009. Specifically, counsel points out that he proposed a plea to Assistant United States Attorney Peter Deegan in September 2008 and that the movant was aware of this effort.

Counsel states that the only issue he believed could be dispositive in this case was a reasonable mistake-of-age defense. Counsel allegedly told the movant that if they did not get the mistake-of-age instruction, the movant would almost certainly be convicted. Following this conversation, counsel had further discussions with the government abouot a potential plea agreement. Counsel states that he discussed in detail with the movant the proposed plea agreement, its purpose, the likelihood of conviction if the movant insisted on going to trial, the potential sentence and the fact that a reasonable mistake-of-age defense would be preserved. Counsel also states that he discussed with the movant the best and worst case scenarios under the federal sentencing guidelines and the maximum sentence that the undersigned could impose. Counsel states that he told the movant that

he could have a trial in this case following his plea if the mistake-of-age defense was recognized on appeal, which, in all likelihood, would have to come from the United States Supreme Court because the Eighth Circuit would likely deny the movant's argument. Counsel specifically denies telling the movant that he would get a fifteen-year sentence if he pled guilty and a sentence of thirty years, life or 200 years if he were found guilty at trial.

Counsel admits that the movant was not happy prior to the March 30, 2009 plea hearing in which he pled guilty, but counsel contends that the movant entered into the plea voluntarily and that the factual basis that the movant admitted was clearly supported by the evidence. Counsel states that the movant told him that he expected a twenty-year sentence, which was within some guideline ranges that counsel and the movant had previously discussed. However, counsel denies promising the movant a fifteen-year sentence if he pled guilty and states that he never calculated a guideline range of fifteen years. Counsel states that at the time the movant entered his guilty plea, the attorney-client relationship was good and that the movant had not expressed dissatisfaction with counsel's representation.

Counsel asserts that the first time he and the movant had a serious dispute was when counsel discussed the draft PSIR with the movant in July 2009. During this conversation, counsel states that the movant insisted on discussing issues that were no longer relevant, but eventually that he and the movant focused on reviewing the PSIR and successfully completed the meeting.

On September 4, 2009, the movant sent a letter to counsel in which he discussed arguments that he hoped counsel would make at the sentencing hearing. Nowhere in the letter did the movant reference any deal that counsel and the movant had with the undersigned, and aside from general desires to be kept informed, the movant did not express dissatisfaction with counsel's representation.

From September 9 through September 13, 2009, counsel spoke to Dianne Fryk, the movant's mother, the movant and others in a series of phone conversations. As a result of these conversations, counsel believed that he had an ethical issue, referencing Iowa Rules of Professional Conduct 32:1.6, 32:1.16(a)(3), 32:1.16(b), 32:1.16(c), 32:3.3 and 32:3.7 in his motion to withdraw, that could affect his ability to represent the movant. Counsel eventually concluded that there may no longer be an attorney-client privilege in place and determined that withdrawal was his only option. Counsel denies that his withdrawal had anything to do with an alleged request for $25,000 in cash. Counsel denies ever requesting a $25,000 cash payment or any other cash payment. Counsel asserts that all fee discussions were between himself, the movant and Dianne Fryk, and not in the presence of anyone else, including Greg Heath. However, counsel does admit that Bruce Fryk, Dianne Fryk's husband, provided him with a $2500 retainer for his work from September 9 through September 14, 2009, which counsel returned to Bruce Fryk.

On September 14, 2009, counsel drove to the Bremer County jail to meet with the movant and Roberts. Counsel states that Roberts did not arrive on time, so counsel met with the movant without Roberts present. Counsel states that he advised the movant that he needed to withdraw from representing the movant, which made the movant visibly angry and led the movant to tell counsel that he wanted him out. As counsel was leaving, he saw Roberts in the reception area and told him that he was withdrawing.

On September 15 through September 17, 2009, counsel and Roberts exchanged letters in which Roberts accused counsel of telling the movant that he had the undersigned in his pocket and that he made promises he could not fulfill. Counsel denies the truth of Roberts's allegations.

## III. ANALYSIS

### A. Parties' Arguments

The movant argues that his plea was involuntary as a result of counsel's ineffective assistance. The movant alleges that counsel's conduct fell below an objective standard of reasonableness when he: (1) promised the movant that he would only serve the statutory minimum fifteen-year sentence, due to counsel's relationship with the undersigned, if he pled guilty; (2) threatened the movant that the undersigned would sentence the movant to a sentence longer than the statutory maximum if he insisted on going to trial and was found guilty; and (3) promised the movant that the undersigned would assist in drafting an appellate brief on the mistake-of-age defense, which, after the Eighth Circuit Court of Appeals found the brief persuasive, would allow the movant to be acquitted at trial. The movant further alleges that he would have insisted on going to trial if his counsel had not provided this ineffective assistance.

The government argues that counsel's performance was not deficient and that the movant has failed to show that he would not have pled guilty had his counsel provided effective assistance. The government argues that the movant's statements at his plea colloquy, in which he stated that his plea was not the result of any threats or promises and that he was satisfied with the representation he received from his attorney, undermine the movant's claim that his plea was involuntary and that he would have gone to trial absent counsel's allegedly ineffective assistance. The government also points out that movant pled guilty on March 30, 2009 and that he never tried to withdraw his plea, despite having a new attorney from September 25, 2009 until the movant was sentenced on January 28, 2010.

The government also argues that the evidence in the record, including counsel's affidavit, belies the movant's claim that counsel's performance fell below an objective standard of reasonableness. Specifically, the government points out that counsel stated in

his affidavit that he never made "any suggestion that I had any special or improper influence on the court and no reasonable person could have understood otherwise. Further, I never had the impression that [the movant] understood this any differently than I intended him to." Affidavit at 3. Moreover, the government points out that counsel denies making any threats or promises to induce the movant's guilty plea.

### B. Applicable Law

### 1. Standards applicable to motion pursuant to 28 U.S.C. § 2255

28 U.S.C. § 2255 allows a prisoner in custody under the sentence of a federal court to move the sentencing court to vacate, set aside or correct a sentence. To obtain relief pursuant to 28 U.S.C. § 2255, a federal prisoner must establish: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *See Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255).

Although it appears to be broad, 28 U.S.C. § 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, 28 U.S.C. § 2255 is intended to redress only "fundamental defect[s] which inherently [result] in a complete miscarriage of justice" and "omission[s] inconsistent with the rudimentary demands of fair procedure." *Hill*, 368 U.S. at 428; *see also United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) ("Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised for the first time on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.") (citing *Poor Thunder v. United States*, 810 F.2d 817, 821 (8th Cir. 1987)). A collateral challenge under 28 U.S.C. § 2255 is not interchangeable or substitutable for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982) (making clear a motion pursuant to 28 U.S.C. § 2255

will not be allowed to do service for an appeal). Consequently, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* (internal quotation marks and citation omitted).

In addition, movants ordinarily are precluded from asserting claims they failed to raise on direct appeal. *See McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001). "A [movant] who has procedurally defaulted a claim by failing to raise it on direct review may raise that claim in a [28 U.S.C. §] 2255 proceeding only by demonstrating cause for the default and prejudice or actual innocence." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the [movant] shows cause and prejudice."). "'[C]ause' under the cause and prejudice test must be something *external* to the [movant], something that cannot be fairly attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (emphasis in original). If a movant fails to show cause, a court need not consider whether actual prejudice exists. *McCleskey v. Zant*, 499 U.S. 467, 501 (1991). Actual innocence under the actual innocence test "means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623-24; *see also McNeal*, 249 F.3d at 749 ("[A movant] must show factual innocence, not simply legal insufficiency of evidence to support a conviction.").[2]

### 2. Standards applicable to Sixth Amendment

The Sixth Amendment to the United States Constitution provides in pertinent part that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his [or her] defen[s]e." U.S. Const., amend. VI.

---

[2] The procedural default rule applies to a conviction obtained through trial or through the entry of a guilty plea. *See United States v. Cain*, 134 F.3d 1345, 1352 (8th Cir. 1998); *Walker v. United States*, 115 F.3d 603, 605 (8th Cir. 1997); *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997); *Thomas v. United States*, 112 F.3d 365, 366 (8th Cir. 1997); *Reid v. United States*, 976 F.2d 446, 448 (8th Cir. 1992).

The Sixth Amendment right to effective counsel is clearly established. *See Strickland v. Washington*, 466 U.S. 668 (1984). Ordinarily, a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding rather than on direct appeal. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003). In *Strickland*, the Supreme Court explained that a violation of the right to effective assistance of counsel has two components:

> First, [a movant] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [movant] by the Sixth Amendment. Second, [a movant] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [movant] of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687; *see also Williams v. Taylor*, 529 U.S. 362, 390 (2000) (reasserting *Strickland* standard). Thus, *Strickland* requires a showing of both deficient performance and prejudice. However, "a court deciding an ineffective assistance claim [need not] address both components of the inquiry if the [movant] makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. If a court finds "counsel's performance adequate, [it] need not address the issue of prejudice under the second prong of the *Strickland* test." *Brown v. U.S.*, 311 F.3d 875, 878 (2002). Conversely, "[i]f it is easier to dispose of an ineffectiveness claim on grounds of lack of sufficient prejudice, . . . that course should be followed." *Id.*; *see also Apfel*, 97 F.3d at 1076 ("[A court] need not address the reasonableness of the attorney's behavior if the movant cannot prove prejudice.").

The United States Supreme Court held in *Hill v. Lockhart*, 474 U.S. 52 (1985) "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id.* at 58. "In the context of guilty pleas, the first half of the *Strickland* . . . test is nothing more than a restatement of the standard of attorney

competence set forth in [*Tollett v. Henderson*, 411 U.S. 258 (1973)] and [*McMann v. Richardson*, 379 U.S. 759 (1970)]." *Id.* at 58-59. Therefore, when a defendant pleads guilty and later alleges that his or her plea is involuntary due to ineffective assistance of counsel, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (quoting *McMann*, 397 U.S. at 771). This means that "a defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [the range of competence demanded of attorneys in criminal cases].'" *Id.* (quoting *Tollett*, 411 U.S. at 267). To establish that counsel's advice fell below this range of competence, a movant "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The "reasonableness of counsel's challenged conduct [must be reviewed] on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. There is a strong presumption of competence and reasonable professional judgment. *Id.*; *see also United States v. Taylor*, 258 F.3d 815, 818 (8th Cir. 2001) (operating on the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" (quoting *Strickland*, 466 U.S. at 689)); *Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989) (broad latitude to make strategic and tactical choices regarding the appropriate action to take or refrain from taking is afforded when acting in a representative capacity) (citing *Strickland*, 466 U.S. at 694). In sum, the court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

To establish prejudice, "[i]t is not enough for [a movant] to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of a guilty plea, to meet the prejudice requirement "the [movant] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 62. In answering that question, the court "must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695.

### 3. *Standards for evidentiary hearing*

A district court is given discretion in determining whether to hold an evidentiary hearing on a motion under 28 U.S.C. § 2255. *See United States v. Oldham*, 787 F.2d 454, 457 (8th Cir. 1986). In exercising that discretion, the district court must determine whether the alleged facts, if true, entitle the movant to relief. *See Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996). "Accordingly, [a district court may summarily dismiss a motion brought under 28 U.S.C. § 2255 without an evidentiary hearing] if (1) the . . . allegations, accepted as true, would not entitle the [movant] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Engelen v. United States*, 68 F.3d 238, 240-41 (8th Cir. 1995) (citations omitted); *see also Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998) (stating that an evidentiary hearing is unnecessary where allegations, even if true, do not warrant relief or allegations cannot be accepted as true because they are contradicted by the record or lack factual evidence and rely on conclusive statements); *United States v. Hester*, 489 F.2d 48, 50 (8th Cir. 1973) (stating that no evidentiary hearing is necessary where the files and records of the case demonstrate that relief is unavailable or where the motion is based on a question of law). Stated differently, the court can dismiss a 28 U.S.C. § 2255 motion without a hearing where "the files and records of the case conclusively show that the prisoner is entitled to no relief."

28 U.S.C. § 2255(b); *accord Standing Bear v. United States*, 68 F.3d 271, 272 (8th Cir. 1995) (per curiam).

## C. Application

The court concludes that it is able to resolve the movant's claims from the record. *See Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993) (holding that "[a]ll of the information that the court needed to make its decision with regard to [the movant's] claims was included in the record" and, therefore, the court "was not required to hold an evidentiary hearing" (citing Rule Governing Section 2255 Proceedings 8(a) and *United States v. Raddatz*, 447 U.S. 667, 674 (1980))). The evidence of record conclusively demonstrates that the movant is not entitled to the relief sought. Specifically, it indicates that the movant's claim fails because counsel represented the movant in a manner that comports with the requirements of the Sixth Amendment.

As an initial matter, the court notes that there is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Taylor*, 258 F.3d at 818 (quoting *Strickland*, 466 U.S. at 689). To overcome this, the movant must show that counsel's advice "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Although the movant's claims, if accepted as true, would certainly mean that counsel's conduct fell below an "objective standard of reasonableness," the movant's incredible claims are belied by the record and, as such, cannot be accepted as true. Consequently, the movant has not shown that counsel performed deficiently. Therefore, the court shall deny the movant's motion.

The movant asserts that counsel provided ineffective assistance by (1) promising the movant that he would only be sentenced to fifteen years in prison if he pled guilty, due to counsel's relationship with the undersigned; and (2) threatening the movant that he would be sentenced to a term longer than the statutory maximum, as counsel was allegedly told

by the undersigned, if he were found guilty at trial. The court rejects the movant's contention that counsel provided ineffective assistance for the following reasons.

First, counsel denies that he stated to the movant that he had any improper influence on the undersigned or that the movant ever gave him the impression that the movant thought he had an improper influence on the undersigned. While counsel did tell the movant about his and his father's relationship with the undersigned and about his experience and knowledge of how the undersigned approached certain cases, counsel states:

> I did not tell him "they have nothing on you," that his actions "were not illegal," that I could "fix this" or "make it go away," that my "father put her through school" or "helped her get appointed as a Federal judge," "She owes everything to my family . . . ," "Judge Read will play ball with whatever I want . . . ," "[w]e have Judge Read on our side . . . ," "I have her in my pocket . . . ," "this was the way things were done, this was the way things were going to be with him," or "promise to fix the problem using his influence with the Federal Judge."

Affidavit at 15-16 (omissions in original) (quoting motion at 3). Counsel specifically denies the movant's claims that he promised the movant that he would only be sentenced to fifteen years if he pled guilty and would be sentenced up to life or 200 years if found guilty after a trial. In his affidavit, counsel states:

> It is . . . true that I told him that he would likely receive a longer sentence [if he were found guilty at trial] than if he pled. That was the whole reason for the plea. However, I never guaranteed what his sentence would be in either event. The reference to 15 years would have been to the statutory mandatory minimum pursuant to the plea agreement. I have no idea what the reference to 30 years or 200 years would have been about as the statutory maximum sentence, absent the plea, was 40 years.

Affidavit at 19.

Not only is the movant's allegation contradicted by counsel's affidavit, it is also contradicted by the movant's own statements and lack of statements. One piece of evidence that suggests that the movant's claim is inherently incredible and untrue is a September 4, 2009 letter written *before* the attorney-client relationship began to deteriorate. In that letter, the movant addressed the factors that the undersigned would consider when determining how to sentence the movant. *See* September 4, 2009 Letter (civil docket no. 4-12). In that letter, the movant made many arguments about the nature and circumstances of the offense, the seriousness of the offense, the need to provide just punishment, the need for the sentence to provide adequate deterrence and the need to protect the public from further crimes, all of which the movant wanted counsel to express at the sentencing hearing. In the letter, the movant also expressed concerns about his speedy trial rights and that he hoped to receive credit for time served, but nowhere did the movant mention any expectation of leniency from the undersigned or allude at all to any improprieties on the part of counsel.

Moreover, in the movant's plea agreement, he initialed next to the following:

> Defendant acknowledges defendant is entering into this plea agreement and is pleading guilty freely and voluntarily because defendant is guilty and for no other reason. Defendant further acknowledges defendant is entering into this agreement without reliance upon any discussions between the government and defendant . . . , without promise of benefit of any kind . . . , and *without threats, force, intimidation, or coercion of any kind*.

Plea Agreement (criminal docket no. 33-2) at 8 (emphasis added). During the movant's plea colloquy, Judge Scoles asked the movant the following: "Has anyone forced or pressured you to plead guilty or made any promises to you to get you to plead guilty other than what's in the plea agreement?" The movant responded, "No." Plea Hearing Transcript (criminal docket no. 62) at 23. Even at sentencing, nearly a year after the movant pled guilty, while Alfred Willett represented the movant and knowing that the

advisory range was between 235 and 293 months, the movant still affirmed that he wished to plead guilty and did not wish to state anything about his former counsel's alleged ineffective assistance. Given this record, the court finds that the movant's allegation that counsel promised him that he only would be sentenced to fifteen years if he pled guilty and that he would be sentenced to life or 200 years if he were found guilty at trial is not credible. Moreover, the court does not find any of the affidavits of the movant's friends or family credible because these affidavits were all filed by the movant's friends and family, each of who have an incentive to help the movant.

Apart from counsel's denial that he made any of these statements, promises or threats, and the movant's own statements, the record as a whole does not support that counsel made any improper statements, promises or threats. The movant had multiple opportunities to convey these statements to the court, including a specific question about whether he believed his counsel's representation was adequate at the plea colloquy, and the movant never conveyed his dissatisfaction. Even after counsel withdrew from representing the movant prior to sentencing, which, if the movant's incredible allegations were true, would seem to indicate the end of a potential improper deal with the undersigned, the movant did not present these statements to the court in the four months between obtaining new counsel and his sentencing. The movant and other persons, including the movant's family, girlfriend and friends state that Alfred E. Willett, the movant's sentencing and appellate counsel, learned of counsel's alleged improper conduct. However, even if Willett knew of the alleged misconduct, he presumably did not find the allegations credible since he did not inform the court that counsel made these improper statements, promises and threats, despite his ethical obligation to do so. Furthermore, Jay Roberts, the Heath family attorney, wrote to counsel after a series of days during which the attorney-client relationship deteriorated in September 2009 that one or two people witnessed counsel say that he had the undersigned "in his pocket," but even at this point

no one informed the court, despite every incentive to do so, that counsel had made what they thought were false promises. *See* September 17, 2009 Letter ("It appears what to me is going on here is that you made a number of promises and elicited a large amount of money from these clients and now you can't live up to your promises . . . .").

When the court looks at all the evidence, the motives of the parties offering the evidence, the timing of when such evidence was offered (all after the deterioration of the attorney-client relationship), the court finds that the movant's claim that counsel made promises and threats regarding his sentencing lacks credibility. The record shows that counsel pursued all avenues to get his client the best possible outcome, including filing a motion to suppress and a motion for ruling on the mistake-of-age defense. Moreover, counsel's detailed affidavit is consistent with his course of behavior during his entire representation of the movant and is within objective standards of reasonableness.

The movant also claims that his plea was involuntary because counsel promised him that the undersigned would draft the winning argument on appeal for the mistake-of-age defense and that the movant would then be acquitted on remand. For many of the reasons already discussed, the movant's allegation is not credible. For one, counsel denies such promise was made. Second, the movant denied that his plea was induced by any promise in both his plea agreement and during the plea colloquy.

In sum, all of the alleged errors do not warrant relief under 28 U.S.C. § 2255. The movant's claims are without merit and are belied by the record. Since the court finds counsel's performance was not constitutionally deficient, it need not address whether the movant was prejudiced by counsel's actions. *See Brown*, 311 F.3d at 878 ("Having found [the movant's] counsel's performance adequate, we need not address the issue of prejudice under the second prong of the *Strickland* test."). Based on the foregoing, the court shall deny the movant's 28 U.S.C. § 2255 motion.

### D. Certificate of Appealability

In a 28 U.S.C. § 2255 proceeding before a district judge, the final order is subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held. *See* 28 U.S.C. § 2253(a). Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. *See* 28 U.S.C. § 2253(c)(1)(B). A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and Federal Rule of Appellate Procedure 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000) (per curiam); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997); *Tiedeman*, 122 F.3d at 523. To make such a showing, the movant must demonstrate that the issues are debatable among reasonable jurists, a court could resolve the issues differently or the issues deserve further proceedings. *Cox*, 133 F.3d at 569 (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)); *see also Miller-El*, 537 U.S. at 335-36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy [28 U.S.C.] § 2253(c) is straightforward: [t]he [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a federal habeas petition is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [movant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would

find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the court finds that the movant failed to make the requisite "substantial showing" with respect to the claims that he raised in the motion. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Because the movant does not present a question of substance for appellate review, there is no reason to grant a certificate of appealability. Accordingly, the court shall deny a certificate of appealability. If the movant desires further review of the motion, the movant may request issuance of the certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520-22.

### IV. CONCLUSION

In light of the foregoing, the motion is denied.

**IT IS THEREFORE ORDERED**:

(1) The movant's 28 U.S.C. § 2255 motion (civil docket no. 1) is denied.

(2) A certificate of appealability is denied.

**DATED** this 20th day of November, 2013.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA